UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------x
In re:

                                     Case No. 8-16-74352-reg

DANIEL REGINO and JAMIE REGINO,

                                     Chapter 13

                       Debtors.
----------------------------------------------------------------x

## MEMORANDUM DECISION AND ORDER

       Before the Court is the Debtors' objection to Claim No. 4 filed by Tayne Law Group,

P.C. ("Tayne") in the amount of $17,248.03 for legal services rendered prior to the bankruptcy.

Prior to bankruptcy, the Debtor, Jamie Regino, engaged the services of Tayne to negotiate debt

reductions with her unsecured creditors.  The terms of the engagement were memorialized in a

written agreement which entitled Tayne to collect a contingency fee of 39% of any debt

reduction negotiated by Tayne.  The agreement also provided that if the Debtor's balances were

paid or zeroed out by a creditor, or if a debt was resolved by means of settlement or judicial

action not involving Tayne, or if the agreement were terminated for any reason, Tayne would be

entitled to collect a 20% flat fee on the total balance of any outstanding debt.  Ultimately Tayne

negotiated settlements with some of the Debtor's creditors and earned fees on the savings which

were paid pre-petition.  Those fees are not in dispute.  However, at the time the Debtors filed

bankruptcy there was still outstanding, unsettled debt and Tayne's claim represents its 20% flat

fee on the balance outstanding on the petition date.

       The Debtors object to the claim on the grounds that Tayne provided no documentation to

support the claim that legal services were rendered, and the amount claimed is excessive given

that Tayne was compensated in full for the accounts actually settled.  Tayne relies primarily on

the agreement signed by the Debtor setting forth its entitlement to the 20% flat fee for unsettled accounts, and argues that an early termination fee is not per se unconscionable or violative of public policy.  Tayne also contends that the 20% flat fee on unsettled accounts is a safeguard allowing the firm to earn fees for work performed despite the failure or inability to settle or resolve a particular debt, and that the Debtors failed to sustain their burden to prove that the fees were disproportionate to the services performed.  Finally, Tayne asserts that it gave the Debtor proper notice of her right to arbitrate fee disputes and she failed to exercise that right.

Generally, fee arrangements entered into freely between an attorney and client are enforceable and the Court is sensitive to the rights attorneys have to enter into a written agreement with a client that establishes the financial understanding between the parties. However, when bankruptcy intervenes between the retention and payment of the attorney's fee and the attorney files a claim in bankruptcy, the Bankruptcy Code may dictate a result different from the agreed upon engagement.  Although not cited by either party, the Court finds that this dispute falls squarely within § 502(b)(4) of the Bankruptcy Code which provides that the Court must disallow a claim "if such claim is for services of an . . . attorney of the debtor, [to the extent that], such claim exceeds the reasonable value of such services;  . . ."  11 U.S.C. § 502(b)(4).

The debt reduction services industry is growing rapidly with little to no regulation of qualifications or fees charged.  The people served by this industry are often unsophisticated, have limited financial means, and are facing severe financial hardship.  There are many individuals and firms in the industry that prey on these circumstances and are seemingly only interested in separating the debtor from her money.   It is the responsibility of the bar, the United States Trustee and the courts to be aware of this problem and act when necessary.  The case before the Court today involves a licensed attorney who appears to be operating in a professional manner

and for that reason this Decision addresses what this Court believes is a small segment of the

debt reduction industry.  This Decision is also limited to the facts presented in that it only applies

to a claim by an *attorney* for services rendered pre-petition.  Many debt reduction services are

performed by non-attorneys.  However, the Court's analysis of the reasonableness of these fees

could apply equally to attorneys and non-attorneys.

For the reasons set forth below, the Court finds that Claim No. 4 in the amount of

$17,248.03 "exceeds the reasonable value" of the services performed by Tayne for the Debtor.

## BACKROUND AND FACTS

On August 5, 2015, Jamie Regino ("Debtor") entered into a written agreement with

Tayne setting forth the terms of engagement for the "express purpose of attempting to resolve

[the Debtor's] unsecured debt over a period of time through negotiation." (Agreement ¶ 1, Exh.

A to Tayne Response to Objection to Claim, ECF No. 18).  At the time of the engagement the

Debtor sought Tayne's assistance in reducing outstanding balances of approximately

$126,579.19.

The Agreement provided that the Debtor would make monthly payments to Tayne in the

sum of $1,450.00, withdrawn directly from the Debtor's bank account, and used "for the purpose

of paying the agreements made with your unsecured creditors and/or by this Office and/or for

services provided by [Tayne] . . .." (Agreement ¶ 5).  The first and second monthly payments

($2,900 in total) however would operate as a non-refundable minimum fee to cover set up of the

Debtor's file, "any in-person consultations and phone consultations, after the first phone call,

creditor contact and any initial document review within the first 30 days."  (Agreement ¶ 6).  The

Agreement also provides that Tayne "earns fees when an oral or written resolution is made on

one or more of your accounts." (Agreement ¶ 7).  "The fees are based on a contingency and are thirty nine (39%) of the savings on each account."   (Agreement ¶ 7).

According to the Debtors, from August 14, 2015 through August 16, 2016, thirteen payments totaling $18,850.00 were made to Tayne.  Over the course of the 13-month engagement, the Debtor acknowledges that Tayne negotiated settlements with some unsecured creditors entitling them to a 39% contingency fee equal to $5,339.20.  These fees were paid to Tayne out of the Debtor's monthly payments and are not disputed by the Debtors. All or nearly all of the funds remaining with Tayne after payment of the $5,339.20 contingency fee and the $2,900 up-front fee appear to have been paid by Tayne to creditors on the settled accounts.

On September 21, 2016, the Debtors filed a petition ("the Petition") for relief pursuant to Chapter 13 of title 11 of the United States Code.  As of the Petition date, the remaining unsettled accounts were: (1) Citibank 8285 account with a balance of $8,357.00; (2) Discover 9232 account with a balance of $20,581.66; (3) Discover 5519 account with a balance of $2,596.63; (4) Lending Club 4055 account with a balance of $32,226.18; and (5) Prosper Marketplace 2345 account with a balance of $22,855.76.

On October 5, 2016, Tayne filed Claim No. 4 in the amount of $17,248.03 which represents 20% of the Debtor's unsettled accounts as of the Petition date.  The basis for the claim as stated in the proof of claim is "Legal Fees Owed for Legal Services Rendered."

On December 20, 2016, the Debtors filed an objection seeking to expunge Claim No. 4. (ECF No. 15).  Tayne filed a response to the objection on February 21, 2017.  (ECF No. 18).  An Affirmation in Opposition and Sur-Reply was filed on behalf of Tayne on March 22, 2017. (ECF No. 21).  The Debtors submitted an Affidavit in Support of the claim objection on October

23, 2017.  (ECF No. 38).  In response, on November 15, 2017, Tayne filed a Memorandum of

Law in Opposition to the Objection to Claim.  (ECF No. 41).  The matter was marked submitted

on November 29, 2017.

## DISCUSSION

### *The Basis for the Claim*

There is some confusion as to whether the claim is being asserted under paragraph 7 or

paragraph 9 of the Agreement.  Tayne's initial response to the claim objection asserts that it is

entitled to payment under paragraph 7.  (ECF No. 18, ¶¶ 7-12).   Paragraph 7 provides in relevant

part that: "If the current full balance is paid or zeroed out by the creditor, with a letter or tax form

the fee is a flat rate of twenty (20) percent of the current balance of the debt owed."  (Agreement

¶ 7).  The Debtors believe that the Tayne claim implicates paragraph 9 of the Agreement which

provides that if the matter "is resolved outside of [the Tayne office] regardless of who terminates

the agreement, the fee imposed shall be a flat rate in the amount of twenty (20%) percent of the

debt owed at the time of termination or shall be one monthly payment, whichever is higher."

(Agreement ¶ 9).  Although Tayne's original response to the Debtors' objection clearly points to

paragraph 7, later submissions, while not specifically citing to paragraph 9, do argue that the

Agreement was terminated and the 20% flat fee arose from such termination.  This would

implicate paragraph 9.

If the claim is in fact being asserted under paragraph 7, the claim must fail.  Although the

Debtors' chapter 13 plan proposes to pay unsecured creditors 100% of their claims, the plan has

not been confirmed, the creditors have not been paid in full and no discharge has entered.  Thus,

the Court cannot find that the unsettled claims have been "paid" or "zeroed out" and it appears

that Tayne would not be entitled to collect the 20% flat fee under paragraph 7 of the Agreement. The basis for the claim falls more squarely within paragraph 9 as both parties agree that the Debtor terminated Tayne's services, either explicitly or implicitly by the filing of the bankruptcy, and the Court finds that any entitlement to the 20% flat fee would be under paragraph 9.

### The Arguments of the Parties

The Debtor argues that, viewed under paragraph 9, Tayne's claim to legal fees is an invalid penalty for early discharge of an attorney and is unenforceable under state law.  It is also the Debtor's assertion that paragraph 9 imposes a liquidated damages provision disproportionate to the services rendered.  *See Truck Rent-A-Center, Inc. v. Puritan Farms 2nd, Inc.,* 361 N.E.2d 1015, 1018 (N.Y. Ct. App. 1977).

Tayne argues that the Debtor freely entered into the contractual arrangement and that despite receiving the invoices and having the option of exercising the arbitration provision in paragraph 11 of the Agreement, the Debtor never disputed Tayne's fees prior to the bankruptcy filing.  Tayne asserts that the Debtor had expressed satisfaction with their services on multiple occasions.  Finally, Tayne contends that the 20% flat fee is not a liquidated damages provision but rather is meant to ensure that Tayne earns the fees that are commensurate to the work performed on a contingency basis.

### Section 502 – Allowance of claims or interests

Pursuant to § 502(a), "a claim . . . , proof of which is filed under section 501 of this title, is deemed allowed, unless a party in interest, . . ., objects." 11 U.S.C. § 502(a).  The proof of claim is considered prima facie evidence of the validity and the amount of the claim.  Fed. R. Bankr. P. 3001(f).  However, if an objection to claim is filed the Court must determine the

allowance of the claim pursuant to § 502(b).  The objector bears the initial burden of coming

forward with evidence sufficient to overcome the presumption of the validity of the claim, and

once that is done the burden shifts to the claimant to prove the validity and amount of the claim

by a preponderance of the evidence.  *See Alsohaibi v. Arcapita Bank B.S.C.(c) (In re Arcapita*

*Bank B.S.C.(c))*, 508 B.R. 814, 817 (Bankr. S.D.N.Y. 2014) (quoting *In re Oneida, Ltd.,* 400

B.R. 384, 389 (Bankr. S.D.N.Y. 2009)).

      Both the Debtor and Tayne have focused their arguments on the enforceability of the

Agreement under New York law.  11 U.S.C. § 502(b)(1).  However, the Court finds that it need

not reach the issue of whether the 20% flat fee is enforceable under state law.  Even if the

contested fee would be upheld under New York law, in bankruptcy a pre-petition claim for

services of an attorney for the debtor is still subject to disallowance under § 502(b)(4) if the

claim exceeds the reasonable value of the services performed.  *See In re CWS Enterprises, Inc.,*

870 F.3d 1106, 1118-19 (9th Cir. 2017) (finding that the Bankruptcy Code's reasonableness

analysis may limit a pre-petition obligation for a debtor's attorney fees, *even if* such fees were

previously allowed under a state court judgment).  For the purposes of this Decision, the Court

will assume, without deciding, that paragraph 9 of the Agreement is enforceable under New

York law and will analyze this matter under § 502(b)(4). *But cf. Landsing Diversified Properties-*

*II v. The First National Bank and Trust Co. of Tulsa* (*In re Western Real Estate*), 922 F.2d 592,

594 (10th Cir. 1990) (502(b)(4) analysis first requires state court determination of damages for

breach under state law).

      Tayne lists the very basis of its claim as "Legal Fees Owed for Legal Services Rendered"

and has consistently maintained that the claim is for legal fees.  Therefore, the Court finds that

Tayne's claim should be analyzed under § 502(b)(4) and will be measured for reasonableness.

### *Section 502(b)(4)*

Section 502(b)(4) provides:

> (b) The court shall determine the amount of such claim in lawful currency of the United States as of the date of filing of the petition, and shall allow such claim in such amount, except to the extent that –

> (4) if such claim is for services of an insider or attorney of the debtor, such claim exceeds the reasonable value of such services.

*See* 11 U.S.C. § 502(b)(4).

Among the purposes of § 502(b)(4) is the prevention of overreaching by the debtor's attorneys and insiders. *In re Food Mgmt. Grp., LLC*, No. 04-20312 (ASH), 2008 WL 2788738, at *5 (Bankr. S.D.N.Y. July 16, 2008), *appeal dismissed and remanded*, 428 B.R. 576 (S.D.N.Y. 2009), and *aff'd*, 484 B.R. 574 (S.D.N.Y. 2012) (citing S. Rep. 95-989, at 63 (1978), *reprinted in* 1978 U.S.C.C.A.N. at 5849 and H.R. Rep. No. 95-989, at 353 (1978), *reprinted in* 1978 U.S.C.C.A.N. at 6309 (§ 502(b)(4) "prevents overreaching by the debtor's attorneys and [the] concealing of assets by debtors")).  Section 502(b)(4) permits courts to examine the claim of a debtor's attorney independently and to disallow it to the extent that it exceeds the reasonable value of the attorney's services.  This review under § 502(b)(4) recognizes the lack of an adversarial relationship between attorney and client and addresses the possibility of, among other things, over-generosity and collusion.  *See In re CWS Enterprises, Inc.,* 870 F.3d at 1118 (citing 4 COLLIER ON BANKRUPCY ¶ 502.02[5] (Alan N. Resnick & Henry J. Sommer eds., 16th ed. 2012) (even if an attorney to the debtor renders services of a non-legal nature such as financial consulting advice, such services may be examined by the court under § 502(b)(4))**.**  Section 502(b)(4) covers claims for services of an attorney whether or not the services were rendered in contemplation of filing for bankruptcy or even whether or not the services had anything to do with the debtor's financial affairs. *The Margulies Law Firm, APLC v. Placide (In re Placide)*,

459 B.R. 64, 72 (B.A.P. 9th Cir. 2011). Finally, a debtor's failure to object to the fees pre-petition, has no bearing on the applicability of § 502(b)(4) or the reasonableness analysis thereunder. *Id*. at 74.

The reasonableness of an attorney's pre-petition fees under § 502(b)(4) is a question of federal law, *Schoenmann v. Bach Constr., Inc. (In re Segovia),* 387 B.R. 773, 779 (Bankr. N.D. Cal.2008), *aff'd,* 2008 WL 8462967, at *6 (B.A.P. 9th Cir. Oct. 22, 2008), and bankruptcy courts have wide discretion in determining the reasonableness of fees in this context, *see In re Placide*, 469 B.R. at 73 (citing *Law Offices of David A. Boone v. Derham–Burk (In re Eliapo),* 468 F.3d 592, 596 (9th Cir.2006)).

Absent a clear definition of the term "reasonable value" as it is used in § 502(b)(4), bankruptcy courts applying this section have adopted a variety of standards from arguably analogous statutes. For example, some courts have employed a lodestar analysis, *In re Placide*, 459 B.R. at 73, some have borrowed the reasonableness standard from state rules of professional conduct, *In re Boulder Crossroads, LLC*, No. BKR. 09-10381-CAG, 2010 WL 4924745, at *13 (Bankr. W.D. Tex. Dec. 1, 2010), and *In re Gutierrez*, 309 B.R. 488, 494 (Bankr. W.D. Tex. 2004), some use standards employed under § 506(b), *In re Segovia*, 2008 WL 8462967, at *6, and still others use § 330, *In re Placide*, 459 B.R. at 73-74.

Courts adopting the reasonableness standard under § 330 find that section to be most analogous because once a debtor files bankruptcy and pre-petition counsel seeks payment from the estate, "counsel's claim for fees is limited to a reasonable amount, in the same fashion as the claim for an estate professional under section 330." *Id*. Using § 330 as a guide, courts have considered the following factors in determining reasonableness of fees under § 502(b)(4):

(1) The amount of work done; (2) the novelty and difficulty of the questions involved; (3) the skill requisite to perform the legal service properly; (4) the results accomplished; (5) whether the fee is fixed or contingent; (6) the amount involved in connection with the services rendered; (7) the length of time consumed; (8) the experience, reputation and ability of the attorneys; (9) the size of the estate; and (10) the opposition met.. . . . The court also suggests consideration of the customary fee, the preclusion of other employment by the attorney, the undesirability of the case and awards in similar cases.

*In re Nelson,* 206 B.R. 869, 882 (Bankr. N.D. Ohio 1997) (citation omitted).

The elements of reasonableness under § 506(b) are not dissimilar.  There courts consider: the time and labor devoted to the matter, its difficulty, whether the fee is fixed or contingent, the amount involved, the results obtained, and other awards in similar cases.  *See In re Boulder Crossroads,* 2010 WL 4924745, at *15 (citing *Blackburn-Bliss Trust v. Hudson Shipbuilders, Inc. (In re Hudson Shipbuilders, Inc.)*, 794 F.2d 1051, 1058 (5th Cir. 1986)).

The Rules of Professional Conduct in New York State impose similar standards on the reasonableness of fees.  Rule 1.5 prohibits a lawyer from making an agreement for or charging an excessive or illegal fee and sets forth a number of factors to be considered.  NY RPC 1.5.  These include the time and labor involved, the fee customarily charged in the locality for similar legal services, the experience, reputation and ability of the lawyer providing the services, the results obtained and whether the fee is fixed or contingent.  These factors do not include the risk that the client will be unable to pay the fee.  While Rule 1.5(a)(8) allows a lawyer to charge a larger fee if the fee is contingent rather than fixed, it is also emphasized that a contingent fee under the Rules is one where the payment depends on a successful outcome of the matter, and not on the law firm's likely success in collection of the fee.  *See* New York State Bar Association Committee on Professional Ethics, Opinion 910 (3/14/12).

The Court finds that "reasonable value" under § 502(b)(4) should be measured under both a federal standard and under state rules of professional conduct.  *See In re Boulder Crossroads*, 2010 WL 4924745, at *13.

### *Does Claim No. 4 exceed the reasonable value of the services provided?*

The Court has already found that the 20% flat fee at issue here is properly analyzed under paragraph 9 of the Agreement which anticipates that the fee is for early termination of the Agreement without regard to whether all, or in fact any, account balances were reduced by Tayne.  Tayne argues that this provision does not constitute liquidated damages but rather, "it is a safeguard allowing Tayne to earn fees that are commensurate to the work performed."  (Tayne Opposition to Claim Objection, ECF No. 41, at 2).  On this issue of whether or not the 20% flat fee is commensurate to the work performed, Tayne attempts to place the burden of proof on the Debtor.  Tayne notes that the "[debtor] provides no information regarding the extent of Tayne's services such as the complexity of the issues, time Tayne devoted, the amount of money involved or the results achieved, yet they claim that Tayne did not earn the fees it now seeks." (Tayne Opposition to Claim Objection, ECF No. 41, at 3).  However, under the § 502 burden shifting doctrine, once the Debtors came forward with their objection which included the argument that the 20% flat fee is unwarranted and unenforceable under state law, the burden shifted to Tayne to prove that the claim is valid and the amount claimed is reasonable.  *See In re Placide*, 469 B.R. at 72-73 (holding that all applicants for awards of professional compensation under 11 U.S.C. § 502(b)(4) bear the burden of proof on the elements of "reasonable compensation" in the same fashion as an estate professional under § 330).  Because of the nature of the contingency fee arrangement, time records for hours billed on the unsettled accounts is not likely to help this analysis.  Moreover, under the Agreement time spent on any particular account

is irrelevant to the collection of the 20% flat fee for early termination.  In fact, on the day the

Debtor signed the Agreement, even if the Agreement was terminated the following day without

any work performed by Tayne, the firm would be entitled to a 20% flat fee on the outstanding

$126,579.19 debt at the time – that would be a fee of over $25,000 for accomplishing nothing.

The Agreement, admittedly signed by the Debtor, states that such fee is intended to "cover any

and all work done for that account. . . . [and the] amount shall be considered fair and reasonable

in accordance with legally accepted standards."  (Agreement ¶ 9).  While this may or may not

have been enforceable against the Debtor pre-petition, the Court will not endorse such a result in

bankruptcy.

   The Court finds that Tayne has already been compensated, pre-petition, for the

reasonable value of the services provided to the Debtor.  Tayne received $2,900 as a minimum

non-refundable fee to set up the file, cover consultations, creditor contact and any initial

document review within the first 30 days.  (Agreement ¶ 6).  Tayne also received a $5,339.20

contingency fee on settled accounts.  Tayne's additional claim for $17,248.03 in this bankruptcy

would, in this Court's view, exceed the "reasonable value" of the services as contemplated by §

502(b)(4).  The Court can think of no scenario where a $17,248.03 flat fee for termination, in

addition to the guaranteed minimum fee already paid, would constitute reasonable value for debt

reduction services for unsettled debts.  Neither party has presented the Court with facts that

would show that this matter involved complex or novel issues, and it appears that debt reduction

is the main, if not sole, focus of Tayne's practice.

   This result furthers the stated purpose of the statute which is, in part, to prevent

overreaching by attorneys to the detriment of unsecured creditors in bankruptcy.  *In re Food

Mgmt. Grp., LLC*, No. 04-20312 (ASH), 2008 WL 2788738, at *5 (Bankr. S.D.N.Y. July 16,

2008), *appeal dismissed and remanded*, 428 B.R. 576 (S.D.N.Y. 2009), and *aff'd*, 484 B.R. 574 (S.D.N.Y. 2012).  As applied in this case, § 502(b)(4) also protects the unsophisticated debtor facing severe financial hardships.

## CONCLUSION

The Court is mindful of the unique nature of the attorney/client relationship and of the significance of reducing an attorney's fee to an amount that is less than that which was agreed upon between the parties.  *See In re Ruffini*, No. 11-78841-REG, 2014 WL 714732 (Bankr. E.D.N.Y. Feb. 25, 2014).  However, in this instance, the Bankruptcy Code requires this result.

For the reasons stated herein, the Court finds that pursuant to § 502(b)(4) of the Bankruptcy Code, Claim No. 4 in the amount of $17,248.03 should be disallowed in its entirety. So ordered.



**Dated: Central Islip, New York**
**May 18, 2018**

_____
**Robert E. Grossman**
**United States Bankruptcy Judge**